UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **KEYANTE MONIQUE JAMES** | **CIVIL ACTION NO. 23-1428** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **JESSICA SLEDGE, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Keyante Monique James, a prisoner at Bossier Maximum Security Center proceeding pro se and in forma pauperis, filed this proceeding on approximately September 19, 2023, under 42 U.S.C. § 1983. She names the following defendants: Probation Officer Jessica Sledge, Marcus Gober, Meliane Allen,[1] Robertson and Robertson Organization, Gober Organization, Bossier Parish, and Bossier City.[2]

For reasons that follow, the Court should stay Plaintiff's claims of unlawful search and false arrest against Probation Officer Jessica Sledge. The Court should dismiss Plaintiff's remaining claims.

**Background[3]**

Plaintiff claims that she dated Marcus Gober ("Gober"), a "Bossier City/Parish informant[.]" [doc. # 9, p. 3]. On December 26, 2019, Plaintiff "moved in with Silvia Allen."

---

[1] Plaintiff alternatively refers to this defendant as Meliane Gober. [doc. # 17].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[3] The undersigned endeavors to present Plaintiff's tangled allegations coherently, construing them liberally and in Plaintiff's favor.

*Id.*  There, Plaintiff's debit cards, social security documents, and hiring package, which included her social security number, "came up missing." *Id.*  "After Valentine's Day," Gober stated that he took Plaintiff's cards and information. *Id.* at 3-4.  Plaintiff suggests that Gober stole her tax refunds. *Id.* at 4.  Plaintiff told Gober he was going to jail for stealing her refunds; "that's when the hell started[.]" *Id.*

Plaintiff suggests that Gober and others followed her, harassed her, and threatened to kill her.  [doc. # 9, p. 4].  Gober allegedly paid others to fight Plaintiff, "which led to [her] first false charge." *Id.*  Plaintiff also lost three jobs because Gober paid her coworkers to "tell him everything about [her]." *Id.*

On March 30, 2022, while Plaintiff and Gober's girlfriend, Nicole—who is allegedly also an informant—"were smoking meth[,]" Nicole hit Plaintiff with a pan and sprayed her with mace.  [doc. # 9, p. 5].  "They pushed [Plaintiff] outside," someone called the police, Plaintiff "went to jail[,]" but Nicole did not. *Id.*  After Plaintiff was handcuffed, Nicole "pushed a device into [Plaintiff's] ear." *Id.*  "That was the 1st device." *Id.*  Plaintiff thinks the device "was some type of data tracking device[.]"  [doc. # 17, p. 5].

On September 13, 2022, Plaintiff was released from confinement.  [doc. # 9, p. 5].  Later, she went to sleep and "woke up to [Gober] pushing another device into [her] ear." *Id.*  "He kept putting [her] out and making [her] come back. [sic]." *Id.*

Plaintiff alleges that Gober would accompany her to a probation office.  [doc. # 9, p. 5].  Plaintiff suggests that she left Gober's residence for some time but eventually returned because she had "nowhere else to go." *Id.* at 6.  Gober "called a probation office and the police." *Id.*  Plaintiff claims that on March 14, 2023, Probation Officer Sledge arrived and arrested her.  [doc. #s 9, p. 5; 17, pp. 5-6].  Plaintiff suggestively claims that Sledge falsely arrested her, alleging

2

that Sledge did not arrest her under a warrant and lacked probable cause. [doc. # 17, p. 5]. Plaintiff's charges are pending. *Id.* at 6.

Plaintiff further claims that Sledge conducted an illegal search when she entered Plaintiff's residence without probable cause. [doc. # 17, pp. 1-2, 5]. She suggests that Sledge discovered drugs behind Plaintiff's residence, and she adds, "anyone could have placed [the drugs] there while [Plaintiff] was up front with the officers." *Id.* at 5-6.

Plaintiff suggests that Officer Sledge "violated [her] right" by speaking to Silvia Allen, Marcus Gober, and Meliane Allen about her probation. [doc. #s 9, p. 6; 17, p. 2]. Plaintiff maintains that she "clearly checked on [her] report not to speak to anyone about [her] probation" because "they were threatening to kill" Plaintiff and her family. [doc. # 17, p. 2].

Plaintiff suggests that Sledge utilized excessive force. [doc. # 9, p. 6]. In an amended pleading, Plaintiff states only that Sledge used "extreme force[.]" [doc. # 17, p. 4].

Plaintiff claims that at Bossier Maximum Security Center, she was denied medical treatment after she "reported the device inside [her]." [doc. #s 9, p. 6; 17, p. 3]. She requested a physician, "and they put [her] on medical watch for 10 days . . . [sic]." [doc. # 9, p. 7]. She maintains, however, that "they didn't take it serious." [doc. # 17, p. 3]. She "never heard anything else." [doc. # 8, p. 7]. A nurse requested her medical records from other medical providers, including a hospital, a recovery center, and a mental hospital. *Id.* In an amended pleading, Plaintiff tentatively faults "Bossier Parish" and "Bossier City [Department of Correction]." [doc. # 17, p. 3 (brackets in original)]. She suggests that she received medical care on October 20, 2023, and on additional dates thereafter. *Id.*

In an amended pleading, Plaintiff appears to claim that she filed nineteen police reports about an informant, but a district attorney failed to arrest the informant. [doc. # 17, p. 3].

3

Plaintiff claims that someone violated her First Amendment right of association and her rights under the Fourth and Fourteenth Amendments. [doc. # 17, p. 4].

Plaintiff seeks injunctive, declaratory, compensatory, punitive, expungement, and habeas corpus relief. [doc. #s 9, p. 8; 17, pp. 4-5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level."  *Montoya v. FedEx Ground Package Sys., Inc*., 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice.  *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53

(5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. State Actor**

Plaintiff names Marcus Gober, Meliane Allen, Robertson and Robertson Organization, and Gober Organization as defendants.

As above, to state a claim under Section 1983 a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. "Private individuals generally are not considered to act under color of law, *i.e.,* are not considered state actors . . . ." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). "[A] private individual may . . . act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Id.* (addition in brackets).

6

Here, Gober, Allen, Robertson and Robertson Organization, and Gober Organization are manifestly private actors, and Plaintiff does not plausibly allege, for instance, that they conspired with a state actor, participated in joint activity with a state actor, or otherwise acted under color of state law. *See Thomas v. Abebe*, 2020 WL 6375119, at *2 (5th Cir. Oct. 29, 2020) (finding, where the plaintiff alleged that his son stole property while he was incarcerated, that "absent any allegation that the defendants were 'jointly engaged with state officials in the challenged action,' [the plaintiff] fails to state a claim under § 1983.").[5]

At best, Plaintiff briefly speculates: "Then I say Department of Correction in my federal registry, leads me to believe that all of them Marcus, the Parish and the City [along with Jessica Sledge] work together in all these matters. [sic]." [doc. # 17, p. 3]. These allegations, however, are vague, implausible, and devoid of necessary detail.[6]

Plaintiff also alleges that Gober was an informant and "called a probation office and the police." "The execution by a private party of a sworn complaint, which forms the basis for an

---

[5] *See also Roman v. Anthony*, 848 F. App'x 633 (5th Cir. 2021) ("Roman has not established that his complaint sets forth a facially plausible claim for relief because he has failed to allege facts or assert any argument addressing whether the defendants acted under color of state law."); *Montgomery v. Walton*, 759 F. App'x 312, 315 (5th Cir. 2019) ("Montgomery pleads no specific facts regarding the connection between the public officials and private citizens or where or when the criminal conduct occurred. In short, the allegations are incomprehensible for purposes of stating a claim of conspiracy against the defendants to deprive him of any cognizable constitutional rights.").

[6] *See Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (a plaintiff's "mere characterization" of a defendant's conduct "as conspiratorial or unlawful [does] not set out allegations upon which relief can be granted."); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has presented no specific facts showing an agreement between the private defendants and any state actor in this case."); *Chaney v. Races & Aces*, 590 F. App'x 327, 330 (5th Cir. 2014) (finding, where the plaintiff alleged that a defendant "made false allegations about a crime committed by" him, that the plaintiff's bare allegation of a conspiracy was insufficient and that, therefore, his claim was frivolous).

arrest, is, without more, not sufficient to make that party's acts state action." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985). "[E]vidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case." *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017). Rather, "the plaintiff must show that the police in effecting the arrest acted in accordance with a preconceived plan to arrest a person merely because he was designated for arrest by the private party, without independent investigation. The action by the police constitutes an abdication of state authority to a private party that is sufficient to cause the private party's acts to become state action."[7] *Sims*, 778 at 1079 (internal quotation marks and quoted sources omitted).

  Here, Plaintiff does not allege that she was arrested merely because Gober designated her for arrest. Nor does she plausibly allege that the arresting officer failed to perform an independent investigation. *See Clark v. Thibodaux City*, 787 F. App'x 198, 201 (5th Cir. 2019). While Gober could have influenced the actions of the arresting officer, Plaintiff does not, under her muddled allegations, plausibly allege that Gober determined the arresting officer's actions. *See Moody*, 868 F.3d at 354 ("Farrell . . . influenced the actions of the police but did not determine them."); *Hernandez v. Schwegmann Bros. Giant Supermarkets*, 673 F.2d 771, 772 (5th Cir. 1982) (opining that a police officer's reliance on "information provided by citizens who

---

[7] "For example, in *Smith v. Brookshire Bros., Inc.*, the plaintiffs showed that pursuant to a prearranged plan, the defendant, a grocery store, 'could have people detained [for shoplifting] merely by calling the police and designating the detainee.'" *Moody*, 868 F.3d at 353 (*quoting Smith v. Brookshire Bros, Inc.,* 519 F.2d 93, 94 (5th Cir. 1975) (per curiam)). "In *Bartholomew v. Lee*, on the other hand, the fact that 'the plaintiffs were arrested in part . . . at the request of the [mall] security personnel, and not *wholly* based on any independent observations of the officers,' was not enough to show joint action between the mall and the police." *Id.* (*quoting Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989) (alteration and emphasis in original)).

witnessed the events" does "not convert the informing party into a state actor" where the officer makes "his own determination of cause to arrest.").

Accordingly, the Court should dismiss Plaintiff's claims against these defendants.

**3. False Arrest**

Plaintiff suggestively claims that on March 14, 2023, Probation Officer Sledge falsely arrested her. [doc. #s 9, p. 5; 17, pp. 5-6]. Plaintiff alleges that Sledge did not arrest her under a warrant and lacked probable cause. [doc. # 17, p. 5].

Plaintiff further claims that Sledge conducted an illegal search when she entered her residence without probable cause. [doc. # 17, pp. 1-2, 5]. She suggests that Sledge discovered drugs behind Plaintiff's residence, and she adds, "anyone could have placed [the drugs] there while [Plaintiff] was up front with the officers." *Id.* at 5-6. Plaintiff's charges are pending. *Id.* at 6.

If Plaintiff is convicted of her pending charges, she may not be entitled to seek relief for these claims until any convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations could necessarily imply the invalidity of any future conviction.[8] *See*

---

[8] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

9

*Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the false arrest claim—and establishing that Sledge lacked probable cause to charge Plaintiff—could necessarily imply the invalidity of a conviction because the claim is essentially a collateral attack on a criminal judgment's validity. *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (*citing Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[9]

Prevailing on the unlawful search claim could also necessarily imply the invalidity of a future conviction because the claim is predicated on the absence of probable cause for the search and therefore would constitute a collateral attack on any future convictions founded on evidence derived from the search.[10] *See Hall v. Lorenz,* 48 F. App'x 481 (5th Cir. 2002) ("Hall's claims

---

[9] *See also Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false-arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

[10] While "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . [b]ecause of doctrines like independent source[,] inevitable discovery, and [] harmless error," Plaintiff does not allege this. *See Heck*, 512 U.S. at n.7 (alterations to original and cited sources omitted); *see also Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("If proved, however, [the plaintiff's] false arrest claim necessarily would call into question his conviction as a felon in possession of a

10

regarding his allegedly illegal arrest and illegal search and seizure, if successful, would undermine the validity of his felony drug conviction."); *Kato*, 549 U.S. at n.5 ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .").

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's claims are *related to* rulings that will likely be made concerning her pending charges. Accordingly, the Court should stay Plaintiff's false arrest and unlawful search claims against Officer Sledge pending the outcome of her ongoing criminal prosecution.[11]

---

firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest. Moreover, it is improbable that doctrines such as independent source, inevitable discovery and harmless error would permit the introduction of the firearm as evidence in this case . . . .").

[11] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

11

**4. Divulging Probation Information**

Plaintiff suggests that Officer Sledge "violated [her] right" by speaking to Silvia Allen, Marcus Gober, and Meliane Allen about her probation. [doc. #s 9, p. 6; 17, p. 2]. Plaintiff maintains that she "clearly checked on [her] report not to speak to anyone about [her] probation" because "they were threatening to kill" Plaintiff and her family. [doc. # 17, p. 2].

Plaintiff does not state a plausible claim. She does not identify any federal law or constitutional right—and the Court is aware of none—which Sledge violated by divulging unspecified information concerning Plaintiff's probation that did not result in any alleged harm. Her complaint does not set "forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States . . . ." *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir.), *cert. denied,* 143 S. Ct. 353 (2022).

To the extent Plaintiff suggests Sledge is liable under a "state-created danger" theory—whereby a "state creates a danger or makes an individual more vulnerable to that danger"—the United States Court of Appeals, Fifth Circuit, has declined to adopt the state-created danger doctrine. *Zinsou v. Fort Bend Cnty.*, 2023 WL 4559365, at *2 (5th Cir. July 17, 2023). Accordingly, the Court should dismiss this claim.

**5. Excessive Force**

Plaintiff suggests that Sledge utilized excessive force. [doc. # 9, p. 6]. In an amended pleading, Plaintiff states only that Sledge used "extreme force[.]" [doc. # 17, p. 4].

Plaintiff does not supply enough pertinent facts to state a plausible claim. Instead, she presents only a label, conclusion, or formulaic recitation of a cause of action which does not satisfy Federal Rule of Civil Procedure 8.[12] The Court should dismiss this conclusory claim.

### 6. Failure to Arrest

Plaintiff appears to claim that she filed nineteen police reports about an informant, but a district attorney failed to arrest the informant. [doc. # 17, p. 3].

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The Court should therefore dismiss this claim.

### 7. Conclusory Claim

Plaintiff claims that someone violated her First Amendment right of association and her rights under the Fourth and Fourteenth Amendments. [doc. # 17, p. 4]. For context, the undersigned presents most of Plaintiff's allegations verbatim:

> I start to do a career development which allowed them to use the entity[ies] that their informant was scamming and they where upset about, which lead to violation of the First Amendment right Violation-freedom to exercise the right to associate with [work] with whatever organization I chose to use the entity. Due to them stealing them they where block and the parish can only have one organization per one facility and all of these issue fall under 42 U.S.C. 1983 violation of the 1st Amendment Right Violation, 4th Amendment Right Violation, and 14th Amendment Right Violation . . . . [sic].

*Id.*

Plaintiff, however, does not identify a responsible defendant. Even assuming she did, her claim is impermissibly vague and conclusory. The Court should dismiss this claim.

---

[12] *See generally McKinney v. Painter*, 2022 WL 287558, at *4 (5th Cir. Jan. 31, 2022) (affirming the dismissal of an excessive force claim as conclusory where the plaintiff failed to provide sufficient factual details).

**8. Medical Care**

Plaintiff claims that at Bossier Maximum Security Center, she was denied medical treatment after she "reported the device inside [her]." [doc. #s 9, p. 6; 17, p. 3]. She requested a physician, "and they put [her] on medical watch for 10 days . . . [sic]." [doc. # 9, p. 7]. She maintains, however, that "they didn't take it serious." [doc. # 17, p. 3]. She "never heard anything else." [doc. # 8, p. 7]. A nurse requested her medical records from other medical providers, including a hospital, a recovery center, and a mental hospital. *Id.* In an amended pleading, Plaintiff tentatively faults "Bossier Parish" and "Bossier City [Department of Correction]." [doc. # 17, p. 3 (brackets in original)]. She suggests that she received medical care on October 20, 2023, and on additional dates thereafter. *Id.*

First, however, Plaintiff does not identify who denied her medical care. She references "they," but she does not identify who "they" are. Plaintiff does tentatively fault "Bossier Parish" and "Bossier City [Department of Correction][,]" but she neither explains how either entity was involved in denying her care nor elaborates on why she faults the entities. To the extent she alleges that they are vicariously liable for another's actions/omissions, they "cannot be held liable on a theory of respondeat superior." *Doe v. Harris Cty., Texas*, 751 F. App'x 545, 549 (5th Cir. 2018).

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

14

Even construing the allegations above liberally and in Plaintiff's favor, the Court should dismiss these claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Keyante Monique James's unlawful search and false arrest claims against Probation Officer Jessica Sledge be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, she must, within thirty (30) days of the date the criminal proceedings against her conclude, file a motion to lift the stay;
>
> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of her conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;
>
> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if she chooses) in this action until the state court proceedings conclude; and
>
> d. Defendant shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion to appoint counsel, [doc. # 16], be **DENIED AS MOOT**. Plaintiff may re-urge her motion if the Court lifts the stay.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 9th day of January, 2024.

                                                                                                                                        _____
                                                                             Kayla Dye McClusky
                                                                             United States Magistrate Judge